[No. 2320.   Decided May 28, 1897.]

## C. G. PERKINS, *Respondent*, v. THE NORTH END BANK OF SEATTLE *et al.*, *Appellants.*

SUBROGATION — WHEN SURETY ENTITLED TO — INCRIMINATING EVIDENCE — DUTY OF COURT TO WARN WITNESS.

Where, in the absence of fraud or mutual mistake, an agreement was entered into between a city and the sureties upon the bond of its defaulting treasurer, in compromise of suit, whereby the city would accept certain securities and cash in full settlement of its claim, and, for the reimbursement of the sureties, would transfer to them certain other securities, which had come into its possession through the transactions of such defaulting treasurer, the sureties are entitled to be subrogated to the rights of the city in such securities, although, subsequent to the compromise of the city's claim against them, it may have been discovered that the indebtedness of the defaulting treasurer was larger than had been supposed at the date of settlement.

When it plainly appears to the court that a question propounded to a witness cannot be answered affirmatively without crimi-

nating him, it is the duty of the court to caution him as to his privilege of not answering, without requiring the opinion of the witness on oath that his answer to the question would tend to criminate him.

Appeal from Superior Court, King County.—Hon. RICHARD OSBORN, Judge.    Affirmed.

*John K. Brown*, and *F. B. Tipton*, for appellant, City of Seattle:

Subrogation never arises from a mere release of a surety or from a partial payment by the surety, but arises only when the obligation of the principal debtor to the creditor has been fully satisfied; and, so long as the principal debtor is indebted to the creditor in any sum, the creditor has the right to hold all liens, funds, claims and securities upon which he could have relied for the payment of the sum still owing, just as if the surety had made no payment whatever.    *Gannett v. Blodgett*, 39 N. H. 152; *Receivers v. Wortendyke*, 27 N. J. Eq. 658; *Kyner v. Kyner*, 6 Watts, 221; *Forest Oil Co.'s Appeal*, 118 Pa. St. 138 (4 Am. St. Rep. 584); *Morrison v. Citizens' National Bank*, 65 N. H. 253 (23 Am. St. Rep. 39); *Stamford Bank v. Benedict*, 15 Conn. 437; *Wilcox v. Bank*, 7 Allen, 270; *Vert v. Voss*, 74 Ind. 565; *Columbia Co. v. Kentucky R. R. Co.*, 60 Fed. 794; *Phenix Ins. Co. v. First National Bank*, 85 Va. 765 (17 Am. St. Rep. 101); *Magee v. Leggett*, 48 Miss. 139; *Lumbermen's Ins. Co. v. Sprague*, 60 N. W. 1101; Sheldon, Subrogation, § 127; *Ames v. Huse*, 55 Mo. App. 422.

*Donworth & Howe*, and *Jenner & Legg*, for appellant, North End Bank:

The court erred in instructing the witness Krug, at the request and motion of counsel for plaintiff, that the witness might refuse to answer whether he had an arrange-

ment with the cashier of the North End Bank by which he was to receive interest upon city funds deposited there. " The objection that the answer would tend to criminate the witness was not made by him, but by counsel for plaintiff; and, coming from such a source, should not have been entertained by the court." *San Antonio St. Ry. Co. v. Muth*, 7 Tex. Civ. App. 443; *Clark v. Reese*, 35 Cal. 89; *Commonwealth v. Shaw*, 4 Cush. 594 (50 Am. Dec. 813); *Ingalls v. State*, 48 Wis. 647; *People v. Bodine*, 1 Denio, 281; *Fries v. Brugler*, 21 Am. Dec. 52, and note.

Counsel for plaintiff elicited from Krug the statement that he had deposited money with the bank, and rested. The defendant had a right then to bring out the fact that the money was left with Bixby for the purpose of working a fraud on the bank and the city, the bank's answer in the case showing that this proof was to be followed up by proof that the officers of the bank knew nothing of the transaction, repudiated it as soon as they learned of it, and turned over to Krug's bondsmen all the remaining product of the alleged deposit. The rule is well settled that if a witness discloses a part of a transaction with which he is criminally concerned, without claiming his privilege, he must disclose the whole. He cannot, after voluntarily testifying in chief, decline to be cross-examined on the ground that his answers may criminate or disgrace him. *People v. Freshour*, 55 Cal. 375. Especially ought this be so, where the facts disclosed are in favor of the party calling him. *State v. Foster*, 23 N. H. 348 (55 Am. Dec. 191); *Foster v. People*, 18 Mich. 266; *State v. Nichols*, 29 Minn. 357; *Mattocks v. Owen*, 5 Vt. 42; *Este v. Wilshire*, 44 Ohio St. 636; *Commonwealth v. Price*, 10 Gray, 472 (71 Am. Dec. 668); Reynolds, Evidence (2d ed.), p. 173.

The authorities are plain that a witness is not entitled to the exemption, unless he makes oath that his answer, in his opinion, would tend to criminate him. *People v. Seaman*, 29 N. Y. Supp. 329; *Kraus v. Sentinel Co.*, 62 Wis. 660; *Kirschner v. State*, 9 Wis. 140; *State v. Wharton*, 3 S. W. 490; *Fries v. Brugler*, 21 Am. Dec. 52, and note.

*Struve, Allen, Hughes & McMicken*, and *Stratton, Lewis & Gilman*, for respondent:

In order that a surety may be subrogated to the securities held by the creditor against the principal debtor, it is not necessary that the payment by the surety should be made in money—it may be made by any method acceptable to and actually accepted by the creditor. 2 Brandt, Suretyship (2d ed.), § 301; *Keokuk v. Love*, 31 Iowa, 119; *Stedman v. Freeman*, 15 Ind. 86; *Knighton v. Curry*, 62 Ala. 404.

We confess the correctness of the question made by counsel, that the objection that the answer would tend to criminate should be made by the witness and not by counsel. But we submit that it was the duty of the court, as well as of counsel, to advise a witness, situated as this witness was, as to his rights. *Chamberlain v. Willson*, 12 Vt. 491 (36 Am. Dec. 356); *People v. Brown*, 72 N. Y. 571 (28 Am. Rep. 183).

It is undoubtedly the law that if the witness voluntarily testifies to a portion of a criminal transaction, he may be cross-examined as to the whole, but, as stated by 1 Greenleaf on Evidence (14th ed.), § 451, "He may claim protection at any stage of the inquiry, whether he has already answered the question in part or not at all."

It is claimed that Krug at no time stated under oath that an answer would, in his opinion, tend to criminate

him. This is not necessary, where it is apparent from the question itself that a categorical answer thereto might criminate the witness. *Janvrin v. Scammon*, 29 N. H. 280; 29 Am. & Eng. Enc. Law, p. 835 n.

The opinion of the court was delivered by

REAVIS, J.—Adolph Krug was, in 1892, elected city treasurer of Seattle, and qualified by giving a bond to the city in the penal sum of $100,000, with Gilman, Kilbourne, Fuhrman, Sander, Ostrander, McTeigh and Edmiston as sureties. In October, 1893, it was ascertained that Krug was short in his accounts and had embezzled large sums of the funds of the city coming into his possession as treasurer. An investigation by the city authorities followed, and shortly thereafter suit was commenced against Krug and his sureties, upon his official bond, to recover the amount embezzled, and thereupon negotiations were commenced between the city and the sureties for a settlement of the deficit. The city authorities discovered some portion of the funds of the city had been deposited by Krug in solvent banks doing business in the city; that the sum of $25,978.58 had been deposited by him in the North End Bank of Seattle, defendant, which at the time of the discovery of the defalcation had become insolvent and had closed its doors. Other portions of the city funds had been invested in city, county and school warrants and upon loans to different private individuals, whose notes and other obligations Krug held as security for the loans made. Other portions of the funds were found in the office of the city treasurer in the form of checks and drafts given by different individuals in payment of taxes, which checks and drafts, upon presentation, had not been honored. Shortly after the defalcation was discovered, the city, by ordinance, selected from these securities such as were considered good and declared them to be the property of the

city. The negotiations with the sureties continued for
about three weeks. The city presented to the sureties the
statement of what it claimed to be the amount of Krug's
defalcation, prepared by its officers, which the sureties ac-
cepted as the correct amount. After further negotiation,
the sureties finally submitted a proposition to the city to
pay in full the amount of Krug's defalcation as claimed
by the city. In this proposal of the sureties the city was
to receive and accept in lieu of cash, in addition to the
securities already received and accepted by its ordinance,
$39,611.32, composed of various specified claims and
items; and the sureties further proposed to themselves pay
$8,211.64, which latter sum was made up of various notes
and checks in the treasurer's office which had been given
to the treasurer for liquor licenses, water rates and taxes
and assessments, but not paid. For the remainder of the
deficiency stated by the city, $78,119.30, the sureties
agreed to deposit to the credit of the city in certain banks
named that amount. Among the banks named was the
Security Savings Bank, and the amount to be deposited
therein was $7,721.82. It was stated further in the propo-
sition that it was made for the purpose of compromise and
settlement, and should not be considered binding unless
accepted by the city, and should not be construed as an ad-
mission of ony liability upon the part of any of the sureties
on the official bond of Krug; and, in case of non-acceptance
by the city, that the sureties reserved the right to make
any legal defense to any action brought on the bond. The
fifth paragraph of the proposition submitted by the sure-
ties was as follows:

" In the event of the acceptance of this proposition, the
city is to dismiss all civil suits begun against said Krug
and us, or against any of us, at its own costs, and to turn
over to us all securities now in its hands, or in the hands
of the finance committee, except such securities as may

be or may have been accepted by said city, belonging to said Krug, or in which he is directly or indirectly interested; and except further, that the securities named in paragraph two hereof, shall be retained by the city for the purpose of collection, and to be turned over to us only in the event of the failure to collect said items or any of them."

The securities named in paragraph two referred to above were those items which made up the amount of $8,211.64, which were to be collected by the city, if practicable, and turned over to the sureties. The proposition of the sureties was accepted by the city by ordinance. Thus, by the agreement between the city and the sureties of its defaulting treasurer, the city was to accept certain securities in lieu of cash as a payment of the deficit. The balance of the defalcation then remaining was to be made up by the sureties in the form of deposits to the credit of the city in different banks; and, in return for such payment, all remaining securities in the possession of Krug and of the city were to be turned over to the sureties for their reimbursement. In the settlement between the sureties and the city, the credit of $25,978.58 deposited by Krug as city treasurer with the defendant, the North End Bank of Seattle, was rejected by the city and was included in the amount which the sureties were to pay by their various deposits in the city banks. The defendant bank was at that time insolvent and had closed its doors. Subsequently to this settlement, the city claimed there were other deficits of its treasurer which had not been included in the settlement of $125,942.26, as found by the ordinance. It is also claimed by the defendant bank that the sureties did not comply with the terms of their contract, in that they did not deposit the sum of $7,721.82 to the credit of the city in the Security Savings Bank, but the testimony in the record supports the finding of the court

below that this was done, and the fact that the Security
Savings Bank became insolvent thereafter could not fairly
place the loss upon the sureties.

The ninth finding of fact, in substance that the sureties
fully performed the condition of their undertaking as sure-
ties and carried out the terms and conditions of their con-
tract of settlement with the city for the defalcation of
Krug as treasurer, and that the city accepted the perform-
ance by the sureties as a full and final settlement of the
defalcation, is fully sustained by the record.

Counsel for the city and the defendant bank maintain
that there could be no subrogation of the sureties in place
of the city to demand the amount due from the defendant
bank, until the whole amount of the defalcation of the
city treasurer was paid by the sureties, and testimony tend-
ing to show that a larger deficiency existed, than that
stated in the ordinance settling with the sureties, had
afterwards been discovered, was offered by defendants.
Such testimony was excluded by the superior court. Much
authority is cited to sustain the contention, that sureties
are not entitled to subrogation until they have made com-
plete payment of the amount due from the principal in
default. The legal proposition thus stated by counsel for
the defendant is unquestionably correct; but, in the view
we take of this case, it is not essential to determine whether
the settlement made was in fact a payment. It was un-
questionably a compromise and settlement between the
city and the sureties of its defaulting treasurer, and neither
fraud nor mutual mistake is alleged as ground for reopen-
ing the settlement made. In the absence of such allega-
tions in the pleadings, such settlement and agreement
made between the city and the sureties must stand, and,
if the sureties have performed their undertaking in the
agreement, they are entitled to have the city make per-

formance on its part of the stipulations contained in the agreement.

The defendant bank set up, as a partial defense, an unlawful agreement alleged to have been made between the city treasurer, Krug, and the cashier of the bank, by the terms of which the city treasurer was to be paid interest on deposits in the bank and the cashier was to derive certain benefits to himself personally by the use of the money so deposited, and that the bank did not receive the benefit of the money so deposited. To prove such unlawful agreement the defaulting city treasurer, Krug, when testifying as a witness, was asked on cross-examination by counsel for the defendant bank, the following question:

"Is it not a fact that you made the arrangement with Mr. Bixby [the cashier], that you put some money with Mr. Bixby at the North End Bank, for which Mr. Bixby was to pay you eight per cent. interest on such money as you left with him?"

To this question objection was made by counsel for plaintiff, who then stated to the court: "I will ask you to instruct the witness that he may refuse to answer the question." The court instructed the witness that he had a right to refuse to answer; that he had a right to protect himself against any testimony which might be used against him in a criminal prosecution. The witness Krug had testified in his examination in chief that he made deposits in the defendant bank and that such deposits consisted of the funds of the city and were deposited by him as city treasurer. Counsel for the defendant bank assign the ruling upon the question as error, and it is discussed at considerable length in the brief. The contention of counsel is severely technical. The question propounded to the witness, upon its face, could not be answered affirmatively without the crimination of the witness. The court could plainly see this. It was the duty of the court

to here caution the witness that he might avail himself of his privilege and not answer. It was the duty of counsel present to suggest to the court such caution, and the state of the case at the trial made it unnecessary to go further and take the opinion of the witness on his oath that the answer to the question would tend to criminate him. We perceive no error in the ruling of the trial court upon this testimony.

Before the commencement of the action, the sureties mentioned assigned all their rights to the respondent, as trustee, for the purposes of the suit. Demand was made upon the city for transfer of the claim it held against the defendant bank, and upon the bank for payment.

We conclude that the findings of fact of the superior court are correct and, perceiving no error in the record, its judgment is affirmed.

SCOTT, C. J., and ANDERS and DUNBAR, JJ., concur.

GORDON, J., not sitting.